ROEBUCK ET AL., APPELLANTS, *v.* COLUMBIA GAS
TRANSMISSION CORPORATION, APPELLEE.

[Cite as Roebuck v. Columbia Gas Transmission Corp.
(1977), 57 Ohio App. 2d 217.]

(No. 77-CA-4—Decided July 11, 1977.)

*Mr. Thomas C. Hanes* and *Mr. Hugh A. Staley, Messrs.*
*Spidel, Staley, Hole & Hanes*, for appellants.

*Garmhausen, Kerrigan, Elsass & Co., L. P. A.*, for appellee.

SHERER, P. J. This appeal is from a declaratory judgment rendered by the Common Pleas Court of Shelby County decreeing that appellee, Columbia Gas Transmission Corporation, has an easement granting it the right to lay a pipeline, and maintain, operate, repair, replace and remove same on land owned by appellants, Neale Roebuck and Gene C. Lemming, and that Columbia's easement is paramount to the title of Roebuck and Lemming.

The facts, briefly, are as follows:

On November 24, 1924, one Thomas Jelle, then the owner of appellants' land, executed and delivered to Ohio Fuel Gas Company a written instrument titled "Right of Way" for the purposes above set forth. Columbia is the successor to The Ohio Fuel Gas Co.

On March 2, 1925, this instrument was presented to the Recorder of Shelby County for recording and he recorded it on March 9, 1925, in volume 6, page 531, of the lease records of his office. He also indexed the instrument in volume 6 of the lease records.

Ohio Fuel Gas Co. laid an 8" pipeline underground diagonally across the land now owned by appellants, marking its course by aerial markers and at fences by stiles consisting of metal pipes 3" in diameter painted in vivid colors.

On October 13, 1969, appellants took title to the land traversed by the pipeline from the Jelle heirs. Prior thereto they had employed an attorney to check the title and had received a report that the title thereto was clear. Appellants' deed was "subject to all legal highways and easements of record."

In 1924 and 1925, G. C. 2757, then in effect, provided:

"The recorder shall keep four separate sets of records, namely: First, a record of deeds, in which shall be recorded all deeds, powers of attorney, and other instruments of writing for the absolute and unconditional sale or conveyance of lands, tenements and hereditaments; sec-

ond, a record of mortgages, in which shall be recorded all mortgages, powers of attorney, or other instruments of writing by which lands, tenements, or hereditaments are or may be mortgaged, or otherwise conditionally sold, conveyed, affected or incumbered in law; third, a record of plats, in which shall be recorded all plats and maps of town lots, and of the subdivisions thereof, and of other divisions or surveys of lands; fourth, a record of leases, in which shall be recorded all leases and powers of attorney for the execution of leases. All instruments entitled to record shall be recorded in the proper record in the order in which they are presented for record.''

Appellee considers the instrument an easement and the trial court so held. Appellants' Complaint alleges that the instrument which is denominated ''Right of Way'' is an easement ''if it is anything.''

The first error assigned is that the court erred in holding that the instrument in question, in evidence as Exhibit 11, properly described the lands to be conveyed by the easement.

The instrument failed to describe the area conveyed to Ohio Fuel Gas by metes and mounds. The instrument recites that it is bounded on the north, east, south and west by named owners of land. The gas company thereafter entered upon the land and installed its pipeline. It followed by erecting the two standards on the land, and one within a few feet away on adjacent land, being iron pipes 4'' in diameter and approximately 4' in height and being white and black in color. This was followed by the company's use since 1925. From the description and evidence we conclude that the easement was properly created. See *Warner* v. *Railroad Co.* (1883), 39 Ohio St. 70; *Stambaugh* v. *Buchanan* (1873), 23 Ohio St. 584. See also 17 Ohio Jurisprudence 2d 227, Deeds, Section 97, which provides:

''Every conveyance of real property must contain such a convenient and definite description that by its terms the land can be located and distinguished from other lands of the same kind. If the description is not such as to locate the land, or is so uncertain that it cannot be known

what land was intended to be conveyed, the deed is void. However, the courts do not favor too stringent a rule in this regard. The description is sufficient if it is such as to indicate the land intended to be conveyed, so as to enable a person to locate it. It is not necessary that it should be such as to identify the object without the aid of extraneous testimony, for 'that is certain which can be rendered certain.' It has been said that descriptions of real estate must be such that a competent engineer can locate the property conveyed."

We see no merit in this assignment of error.

The second error assigned is that the court erred in holding that Jelle's permission to use the land was imputed to plaintiffs who were innocent purchasers for value.

The third error assigned is that the trial court erred in holding that this instrument was recorded.

The fourth assignment of error is that the court erred in holding that the plaintiffs had constructive notice.

G. C. 2757, in effect in 1924 and 1925, required a Recorder to keep four separate sets of records, namely:

"First, a record of deeds in which shall be recorded all deeds, powers of attorney, and other instruments of writing for the absolute and unconditional sale or conveyance of lands, tenements and hereditaments;

"Second, a record of mortgages * * *.

"Third, a record of plats * * *.

"Fourth, a record of leases * * *.

"All instruments entitled to record shall be recorded in the proper record in the order in which they are presented for record."

Also, Revised Code 2764, then in effect, required a Recorder to keep alphabetical indexes, direct and reverse, of all names of both parties to all instruments received by him for record.

It is conceded and the court found that the instrument was mistakenly recorded and indexed in the lease records.

Appellant argues that since the instrument was mistakenly recorded and indexed in the lease records it was not recorded.

In its conclusions of law, the court concluded that the mistaken recording of the instrument constituted constructive notice to appellants of the contents of the instrument, citing *Valley City Mortgage & Loan Co.* v. *Nelson* (1924), 2 Ohio Law Abs. 554.

In *Valley City* the owner of two farms sold the timber thereon to a lumber company, the conveyance being a bill of sale which was recorded, not as a deed, but as a chattel mortgage. The court held that the conveyance was for an interest in land and was duly executed as a deed. At page 555, the court stated:

"The remaining proposition for consideration is whether or not the leaving for record of the timber conveyance, notwithstanding its improper record, was constructive notice to the mortgagees, and whether or not they took their mortgages subject to the timber conveyances. The record was wrongful conduct on the part of the recorder, and a failure to perform his statutory duty, and who should bear the burden of the results?

"It seems apparent from an examination of authorities that there is a serious conflict as to whether a grantor is entitled to the protection of his deed, although improperly recorded, or not recorded at all, or whether such situation prevents such deed from prevailing against subsequent grantees, or mortgagees, without actual notice. The very decided weight of authority seems to prevail, however, in favor of the grantor, where the recording act provided in effect that the rights of the parties are fixed by the filing of the instrument for record, as provided in 8543 GC. In *Rider* v. *Crobaugh*, 100 O. S. 95, it is decided that the filing of a mortgage for record is equivalent to record under 8321 GC. and the delay or neglect of the recorder doing his ministerial duty will not have the effect of postponing a lien.

"The conclusion is reached that the grantee of the timber by the filing of his deed, which was otherwise effective for such conveyance, with the county recorder, did all that was required of him for the protection of his title, and that conveyance should prevail against the mortgagees,

notwithstanding the failure of the recorder to make a proper record."

The appellants have noted a conflict of authority mentioned in *Valley City* and have cited numerous cases from other states and texts both pro and con. We have examined the cases and texts cited and we adopt the holding of the court in *Valley City* as the law applicable to the facts in this case and conclude that the filing of the instrument in question constituted constructive notice to appellants of the easement granted by Jelle to the Ohio Fuel Gas Co.

Further, we conclude that the markers placed on the land by Ohio Fuel Gas Co. which a reasonably prudent inspection of the premises would have disclosed and the insertion in appellants' deed of the words "subject to all legal highways and easements of record" were sufficient to cause appellants to make further inquiry which would have disclosed the existence of the easement. Reasonable prudence in examining title to land requires an inspection of all records in the Recorder's office affecting the title to land.

We see no merit in appellants' second, third and fourth assignments of error.

The fifth assignment of error is that the trial court erred in holding that defendant-appellee is entitled to a fifty foot right of way and that any roads or driveways constructed must be at least 16" above the pipeline, notwithstanding there is nothing in the instrument to so indicate.

In its Amended Answer to the Complaint, appellee asserted that it had a good and valid easement as against complainant for pipeline purposes in a strip of land 50 feet wide running in a diagonal line across the premises described in the Complaint and requested the court to make a declaration to that effect.

The instrument in question recites that the grantors:

"do hereby grant to The Ohio Fuel Gas Company, its successors and assigns, the right to lay a pipe line, and maintain, operate, repair, replace and remove the same
* * *

"with the right of ingress and egress to and from the same; the said grantor to fully use and enjoy the said premises, except for the purpose hereinbefore granted to the said Company. Said pipe to be buried so as not to interfere with the cultivation of the land, and said company to pay any damages which may arise to crops and fences from the laying, maintaining and operating said pipe line, said damages, if not mutually agreed upon, to be ascertained and determined by three disinterested persons, one thereof to be appointed by the grantor heirs or assigns, one by the Company, its successors or assigns, and the third by the two appointed as aforesaid, and the award of such three persons shall be final and conclusive.

''And the said Company, its successors and assigns, is hereby further granted the right at any time to lay, maintain, operate, repair, replace and remove a second line of pipe alongside of the first line as herein provided, upon the payment of a like consideration, and subject to the same conditions; also may change the size of its pipes; the same may be done without interruption to the use of said line; the damages, if any, to crops and fences in making such change to be paid by the Company.''

Here, the right to use the grantor's land was granted by a written instrument for the purposes specified therein. The instrument did not define the width of the easement.

In 18A Ohio Jurisprudence 2d 498, 499, 500, Easements, Section 51, it is stated:

"The extent and limitations of an easement created by express grant are to be ascertained from the language of the grant and the circumstances surrounding the transaction that is to say, the extent of the easement granted or reserved by a deed depends primarily upon a proper construction of the instrument. The instrument creating the easement limits the use, and only such rights are construed as being given as are within the contemplation of the parties and within the terms of the grant. The nature, location, and extent of an easement are thus to be determined.

''Surrounding circumstances may, however, be taken into consideration in order to ascertain the intention of the

parties to the deed, for it might operate very unjustly if the grant should be construed in its widest sense, irrespective of the condition of things to which it had reference when it was made. In other words, evidence may be introduced to show the situation and condition of the easement and properties involved, the use made of it, what obstructions, if any, existed at the time of the grant, and all other facts bearing upon the situation and relation of the parties, in order to determine what was granted by one party and received by the other, the object being to apply the grant to the subject matter as the parties intended.

"The court may also consider the subsequent conduct of the parties in relation to the subject matter. Acquiescence for a long time in a certain construction of a grant of an easement estops the assertion of a different construction.

"The grant of a thing includes by implication all things necessary to its use. Thus, permission to lay pipes includes the right to enter and dig the land to lay them. On the other hand, if an easement is not specifically defined, the rule is that its extent is only such as is reasonably necessary and convenient for the purpose for which it was created."

The parties to this instrument intended that the grantee use more of the land than occupied by the pipes. It contemplated damage to crops adjacent thereto occasioned by the grantee's use of the land. It was necessary to grantee's use that it have the right to maneuver equipment in the vicinity of the pipes in the exercise of its right to install, replace, repair, and remove pipes.

Furthermore, evidence was admissible to show what was necessary to the enjoyment of the use granted. Appellee presented evidence that it was necessary to use a strip fifty feet wide in order to enjoy the use granted. See *Day, Williams & Co.* v. *Railroad Co.* (1884), 41 Ohio St. 392. See also *Trattar* v. *Rausch* (1950), 154 Ohio St. 286.

We see no merit in the fifth assignment of error.

The sixth error assigned is that the trial court erred in holding that plaintiffs as innocent purchasers for value

must suffer, notwithstanding the instrument in question was improperly recorded.

For the reasons expressed in this opinion in disposing of appellants' second, third and fourth assignments of error, we conclude that there is no merit in the sixth assignment of error.

The seventh assignment of error is that the trial court erred in holding that defendant-appellee's title is paramount to plaintiffs-appellants' title.

Based upon our conclusions with respect to appellants' other assignments of error, we conclude that the trial court did not err in concluding that the rights of defendant-appellee were paramount to the rights of appellants.

Finding no prejudicial error in the proceedings of the trial court, the judgment will be affirmed.

*Judgment affirmed.*

McBRIDE, J., concurs.
KERNS, J., concurs in the judgment only.