**In re Paul A. GERACI, Debtor.**

**Jeffrey M. Kellner, et al., Plaintiffs**

v.

**First Ohio Banc & Lending, Inc., et al., Defendants.**

**Bankruptcy No. 11–31590.
Adversary No. 11–3386.**

United States Bankruptcy Court, S.D. Ohio, Western Division, at Dayton.

Signed March 24, 2014.

Entered March 25, 2014.

Charles J. Roedersheimer, David R. Wiechel, Dayton, OH, for Plaintiffs.

Amelia A. Bower, Columbus, OH, David M. Hollingsworth, Enon, OH, for Defendants.

Mortgage Electronic Registration Systems, Inc., pro se.

Carolyn Rice, pro se.

## DECISION DETERMINING MORTGAGE LIEN IS SUBJECT TO AVOIDANCE PURSUANT TO 11 U.S.C. § 544(a)(3)

LAWRENCE S. WALTER, Bankruptcy Judge.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 157(b)(2) and 1334 and the standing General Order of Reference in this District.

This matter is before the court on the amended complaint [Adv. Doc. 53] filed by Plaintiffs Chapter 13 Trustee Jeff Kellner and Debtor Paul Geraci ("Plaintiffs") to: 1) avoid and have released a mortgage on

Debtor's one-half interest in real property constituting the Debtor's personal residence known by the street address 622 Franklin Avenue, Englewood, Ohio 45322; and 2) bar the mortgage holder from filing an unsecured proof of claim subsequent to avoidance. The mortgage is held by Defendant Flagstar Bank ("Flagstar")[1] which answered the amended complaint and filed a cross-claim against Co-defendant Shelly Geraci, the Debtor's non-filing wife [Adv. Doc. 54]. The cross-claim was dismissed by the court [Adv. Doc. 75] and, as of the trial date, no claims against Shelly Geraci remained. Consequently, the avoidance dispute is limited to whether the mortgage may be avoided as to the Debtor's one-half interest in the real property at issue.

The trial was held on January 29, 2014. After review of the testimony of the two witnesses, the exhibits, stipulations, briefs, and arguments of counsel, the court determines that Flagstar's mortgage is subject to avoidance as to Debtor Paul Geraci's one-half interest in the real property at issue and the avoided lien will be preserved for the benefit of the estate. The court further determines that upon avoidance, Defendant Flagstar is permitted to file a timely unsecured claim pursuant to Fed. R. Bankr.P. 3002(c)(3). The court will now present a more detailed factual and legal basis for these determinations.

### FACTUAL FINDINGS

The following are the findings of fact from the parties' stipulations [Adv. Doc.

90], the exhibits admitted at the trial, and the testimony of the witnesses.

Debtor Paul A. Geraci ("Debtor") and his non-filing wife, Shelly L. Geraci, acquired title to property known as 622 Franklin Avenue, Englewood, Ohio 45322 ("622 Franklin Property") by Special/Limited Warranty Deed filed on February 13, 2007 ("Deed") [Def. Ex. A[2]]. The Debtor and his non-filing wife each own an undivided one-half interest in the property. The Deed contains a description of the property by street address, parcel number, and legal description which is stated in the Deed as follows:

Situate in the City of Union, County of Montgomery and State of Ohio and being Lot numbered 818 in the Springview Acres Subdivision No. 7, as recorded in Plat Book "69", Page 20 of the Plat Records of Montgomery County Ohio.

[Def. Ex. A]. The parties agree that the legal description, parcel number, and street address as listed in the Deed are correct identifiers for the 622 Franklin Property.

On March 12, 2008, the Debtor voluntarily executed a Note in the amount of $99,216.00 payable to First Ohio Banc & Lending, Inc. ("Note") [Def. Ex. B]. On that same date, the Debtor and Shelly Geraci voluntarily executed an Open–End Mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS") as nomi-

1. The Debtor named three potential mortgage holders and/or servicers in the complaint: First Ohio Banc & Lending, Inc., Flagstar, and Mortgage Electronic Registration Systems, Inc. ("MERS"). Only Flagstar filed an answer asserting that it is the successor-in-interest to MERS as nominee for First Ohio Banc & Lending [See Doc. 54, Cross-claim, ¶ 8]. This decision does not include a determination of whether Flagstar actually holds the note and mortgage because no evidence on that issue was presented at the trial. Conse-

quently, should the identity of the actual mortgage holder remain subject to dispute, the parties agreed that it may be addressed in later proceedings.

2. Although most of the exhibits were used and identified by both parties in their joint stipulations and at trial, the court will use Defendant Flagstar's exhibit designations for citation purposes in this decision.

nee for First Ohio Banc & Lending, Inc. in the principal amount of $99,216.00 ("Mortgage") [Def. Ex. C]. The Mortgage was filed in Instrument No. Mort 08–020905 of the Montgomery County Records on March 25, 2008. This Mortgage creates the lien which Plaintiffs assert is avoidable.

The front page of the Mortgage instrument contains a reference to the lender obtaining a security interest in the "following described property" in Montgomery County, Ohio underneath which it states:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

APN # : M58–00201–0034

which has the address of 622 FRANKLIN AVE, ENGLEWOOD, Ohio 45322–3213 ("Property Address")

The street address and the tax identifier provided on the front page of the mortgage are correct identifiers for the 622 Franklin Property owned by the Geracis and may be cross-referenced against the same identifiers in the Deed. However, the "Legal Description" referred to on the front page and attached to the Mortgage as Exhibit A, contains entirely incorrect information. More specifically, the legal description attached to the Mortgage states as follows:

### Exhibit A

SITUATED IN THE CITY OF CENTERVILLE, COUNTY OF MONTGOMERY, STATE OF OHIO AND BEING LOT NUMBERED TWENTY (20) OF ROSE ESTATES, SECTION 1 AS RECORDED IN PLAT BOOK "90", PAGE 83 OF THE PLAT RECORDS OF MONTGOMERY COUNTY, OHIO

PARCEL ID NO: 068–011–09–0003

Commonly known as 210 Marsha Jeanne Way Dayton, OH 45458. However, by showing this address no additional coverage is provided.

Both parties agree that the entirety of the language in Exhibit A, including the legal description, Parcel ID number, and street address, is for a different parcel of real property, one referred to for purposes of this decision as the Marsha Jeanne Way Property. The Geracis have never had an ownership interest in the Marsha Jeanne Way Property described in Exhibit A.

At the trial, Debtor's counsel called Robert Ross to testify regarding how the defects in the mortgage would impact a title search for a potential purchaser of the 622 Franklin Property. Mr. Ross is a local attorney who has engaged in real estate title work for about 25 years[3] for both residential and commercial properties. Mr. Ross testified that when conducting a title search, he would research various public records including those found in the Recorder's Office as well as Auditor and Treasurer records to discover any encumbrances or other interests against the property to be purchased.

How the search would begin depends on what information is provided to Mr. Ross. If Mr. Ross has the deed, he would use the legal description of the property contained therein. On the other hand, with the names of the current owners or property address, he would use auditor and treasurer records to obtain a legal description for the property at issue. Mr. Ross stated that the legal description describes a piece of property by its boundaries as contained in county records and is a more definitive identifier of a piece of property than a street address. Furthermore, the Recorder's Office indexes properties by their legal description. Consequently, the legal de-

---

**3.** Mr. Ross testified that he had done legal real estate work for 20 years, but also worked for title companies before becoming an attorney.

scription is a more useful tool in a title search than a street address which is just a common label that does not describe the property and is often unreliable. Likewise, the parcel ID number can be a useful tool to find a legal description but once the legal description is found, it is that along with the owner's name that is used to review the chain of title and look at instruments contained in the chain.

Once a legal description is obtained, it would be used in reviewing the records from the Recorder's Office. Mr. Ross was provided a copy of the Montgomery County Recorder's Index as of April 2, 2013 for the names Paul Geraci and Paul A. Geraci ("Index") [Def. Ex. F]. Mr. Ross indicated that a title examiner would use this Index to determine what properties are currently owned or were owned by the Debtor and their chain of title. The Index covers a recording period from 1995 through April 2, 2013.

The Index has a total of twenty-one items or instruments under the names Paul Geraci and Paul A. Geraci. For each, whether it be a deed, mortgage, release of mortgage or other instrument, the Index indicates the property that the instrument relates to by way of legal description. Each of the twenty-one instruments relates to one of three different legal descriptions: 1) Bayberry Trail S03A (LOTS 0–0) Lot/Unit: 121 ("Bayberry Trail"); 2) Springview Acres 07 (LOTS 780–942) Lot/Unit: 818 ("Springview Acres"); and 3) Rose Estates S01 (LOTS 1–26) Lot/Unit: 20 ("Rose Estates") [Def. Ex. F]. The parties agree that the "Springview Acres" legal description is the legal description of the 622 Franklin Property. The "Rose Estates" legal description, on the other hand, describes the Marsha Jeanne Way

property that is not owned by the Debtor. The "Bayberry Trail" legal description describes a separate parcel of property that the Debtor owned on Coralberry Drive and was in foreclosure at the time the bankruptcy petition was filed.

Mr. Ross testified that the legal description on the Deed for the 622 Franklin Property matches the "Springview Acres" legal description on the Index. Consequently, in doing a title search for a potential purchaser of the 622 Franklin Property using the legal description for that property from the Deed, Mr. Ross testified that he would review only those instruments shown on the Index to relate to the "Springview Acres" legal description. He would not look at the instruments associated with the "Bayberry Trail" or "Rose Estates" legal descriptions because those instruments relate to entirely different parcels of property than the one being considered for purchase. Mr. Ross testified that unless there was some clear error or suspicious item on the Index, he would not examine instruments that were outside the chain of title for the property he was researching.

In his review of the Index, Mr. Ross testified that Item # 11 is the Deed related to the "Springview Acres" property and is, in fact, the Deed by which the Debtor took title to the 622 Franklin Property in February of 2007. This would be the starting point for researching encumbrances on the property. The Index indicates three mortgages on the "Springview Acres" property which are Items # 10, # 12 and # 13.[4] The Index indicates that all three mortgages have been released via instruments listed as Items # 6, # 7 and # 9. These are the only items on the Index related to the "Springview Acres"

---

**4.** Mr. Ross indicated that the listings on the Index are not necessarily in chronological order so a mortgage and release on the

"Springview Acres" property is actually listed before the Deed by which Mr. Geraci acquired title to the property.

legal description. Consequently, if Mr. Ross were conducting a title search of the 622 Franklin Property for a potential purchaser, he would indicate that all mortgages on the property had been released and no mortgage liens currently existed on the property.

The Mortgage that Plaintiffs want to avoid is listed on the Index as Item # 8. However, it is improperly indexed by the "Rose Estates" legal description which describes the Marsha Jean Way property. Because it is not indexed by the "Springview Acres" legal description, Mr. Ross testified that the Mortgage does not fall in the chain of title for the 622 Franklin Property and he would not have known to review it during a title search nor identify it as an encumbrance for a potential purchaser of the 622 Franklin Property.[5]

Mr. Ross further testified that there were no suspicious errors or other red flags on the Index itself that would lead him to review instruments outside the chain of title for the 622 Franklin Property. For example, he noted that some instruments only contain a street address and do not contain a legal description of the property to which they relate. He noted that the lack of a legal description might be indicated in the records by a blank area where the legal description should be. In such circumstances, Mr. Ross testified that he would review the instrument to determine the property to which the instrument related. No such blanks existed with respect to the Paul Geraci Index.

## LEGAL ANALYSIS

### A. Section 544 Avoidance Powers and "Bona Fide Purchaser" Status

Joint Plaintiffs,[6] the Debtor and Chapter 13 Trustee, seek to avoid the Mortgage pursuant to 11 U.S.C. § 544(a)(3) because of the defective legal description the Mortgage contains. Sec-

---

5. Mr. Ross testified that assuming he was given the Mortgage at issue in this case, reviewed the contents, and saw the inconsistencies between the front page and attached legal description, he would still consider it a mortgage on the wrong property because the legal description is considered the controlling identifier of encumbered property.

6. At the trial, the court addressed an issue raised by Flagstar which is whether the Plaintiff–Debtor has direct standing to avoid a mortgage lien pursuant to 11 U.S.C. § 544(a). Flagstar asserts that a debtor's direct standing to use § 544(a) is limited and inapplicable in this case. The court agrees. Section 544(a) is "unambiguous and grants the trustee, not debtors, the powers and rights of a bona fide purchaser" to avoid a transfer of an interest in property or to defeat a mortgage. *Bank of New York v. Sheeley (In re Sheeley)*, 2012 WL 8969064, at *12 (Bankr.S.D.Ohio April 2, 2012). However, a debtor may use § 544 powers to avoid a transfer to recapture exempt assets, but only in the limited circumstances provided in 11 U.S.C. § 522(h). One limitation on a debtor's ability to make use of these avoidance powers is that the transfer sought to be avoided may not be a voluntary transfer on the part of the debtor. 11 U.S.C. § 522(g)(1)(A). Because a mortgage is a consensual or voluntary lien, a debtor cannot use § 522(h) to take on the trustee's powers to avoid a mortgage lien. *Kildow v. EMC Mort. Corp. (In re Kildow)*, 232 B.R. 686, 692–93 (Bankr.S.D.Ohio 1999). Consequently, the Debtor lacks direct standing to pursue the avoidance of Flagstar's mortgage lien in this case. Nonetheless, the Sixth Circuit Bankruptcy Appellate Panel concluded that a debtor can exercise a trustee's § 544 avoidance powers using derivative standing to pursue a benefit for the estate rather than to pursue a debtor's own interests. *U.S. Bank Nat'l Assoc. v. Barbee (In re Barbee)*, 461 B.R. 711, 714–15 (6th Cir. BAP 2011). The court made clear at the trial that the Debtor's limited role in this adversary proceeding is in representation of the estate through derivative standing. The Debtor does not have standing to pursue avoidance for his own benefit nor may he obtain an exemption in any recovery. 11 U.S.C. § 522(g).

tion 544(a) gives the trustee certain "strong arm" powers that include the ability to set aside a mortgage that a hypothetical bona fide purchaser of that property on the date of the bankruptcy filing would be able to avoid under state law. 11 U.S.C. § 544(a)(3); *Argent Mortg. Co. v. Drown (In re Bunn)*, 578 F.3d 487, 488 (6th Cir.2009). Pursuant to Ohio law, an encumbrance is unenforceable against a bona fide purchaser who takes in good faith, for value, and without actual or constructive knowledge of any defect. *Mason v. Ocwen Loan Servicing, LLC (In re Votaw)*, 2012 WL 529242, at *5 (Bankr. N.D.Ohio Feb. 17, 2012). Because § 544 gives the trustee bona fide purchaser status regardless of any actual knowledge that the trustee may have, constructive knowledge is the only relevant inquiry in a § 544 avoidance action. 11 U.S.C. § 544(a); *Simon v. Chase Manhattan Bank (In re Zaptocky)*, 250 F.3d 1020, 1027 (6th Cir.2001); *Bank of New York v. Sheeley (In re Sheeley)*, 2012 WL 8969064, at *8 (Bankr.S.D.Ohio April 2, 2012).

■■■ "Ohio has long abided by the principal that a purchaser of real property is charged with constructive notice of all prior conveyances recorded in his chain of title." *Columbia Gas Transm. Corp. v. Bennett*, 71 Ohio App.3d 307, 594 N.E.2d 1, 5 (1990). Unlike actual notice, constructive notice is imputed notice which exists by reason of the proper filing and recording of a conveying instrument. *Id.* at 6. For purposes of constructive notice, Ohio law assumes that a purchaser of residential property has diligently and thoroughly examined the chain of title via relevant title indexes to discover the existence of adverse claims or encumbrances. *Bunn*, 578 F.3d at 489; *Columbia Gas*, 594

N.E.2d at 6. Consequently, the failure to discover an instrument within the chain of title, even though improperly recorded by a county recorder, will not negate constructive notice. *Columbia Gas*, 594 N.E.2d at 6 (citing *Roebuck v. Columbia Gas Transm. Corp.*, 57 Ohio App.2d 217, 386 N.E.2d 1363 (1977)).

■■■ Nonetheless, a purchaser's obligation to examine the instruments is limited to those that could reasonably be expected to exist in the record chain of title. *Id.* The purchaser "is not required to exercise a higher degree of diligence and undertake an exhaustive search of the records to discover the most remote adverse claims or encumbrances." *Id.* (citing *Spring Lakes Ltd. v. O.F.M. Co.*, 12 Ohio St.3d 333, 467 N.E.2d 537, 540 (1984)). "To impute to a purchaser constructive notice of an instrument outside the chain of title merely because it was recorded is 'wholly inconsistent with equitable principals'" and is, further, inconsistent with the purpose of recording statutes which is to put third parties, like lien holders and potential purchasers, on notice. *Id.* (further citations omitted); *Fifth Third Mortg. Co. v. Brown*, 970 N.E.2d 1183, 1186 (Ohio Ct.App.2012); *Terra Vista Estates, Inc. v. Moriarty*, 1992 WL 292267, at *2 (Ohio Ct.App. Oct. 15, 1992) (concluding that the simple act of recording a lien does not put a purchaser on constructive notice if the record is outside the chain of title). Consequently, where an instrument improperly identifies the property burdened and that erroneous description causes the instrument to be recorded outside the chain of title through no fault of the recorder,[7] a subsequent bona fide purchaser cannot be charged with constructive notice of the conveyance. *Columbia Gas*, 594 N.E.2d at

---

**7.** When the misindexing of an instrument is the fault of the recorder's office as opposed to a drafting error, then "the great weight of authority supports sustaining the validity" of the instrument. *Columbia Gas*, 594 N.E.2d at 7.

7. *See also Menninger v. Hawthorne (In re Hawthorne)*, 2013 Bankr.LEXIS 1567, at *9 (Bankr.S.D. Ohio April 1, 2013).

 The court must next determine whether the errors in the Mortgage caused it to be recorded outside the chain of title in a manner that would not charge a subsequent bona fide purchaser with constructive notice of the encumbrance. A bankruptcy judge from this district addressed the issue and almost identical factual scenario and concluded that constructive notice was lacking and the mortgage was avoidable. In *Menninger v. Hawthorne (In re Hawthorne)*, a trustee attempted to avoid a mortgage that encumbered joint debtors' property when the mortgage referenced a correct street address and parcel number for the debtors' property, but also provided an incorrect legal description for a parcel of property that the debtors had never owned. 2013 Bankr.LEXIS 1567, at *3. Judge Hopkins noted that the mortgage was recorded, but the only descriptor of the encumbered property used in the recorder's index was the erroneous legal description describing the incorrect parcel of property. *Id.* at *10. While the mortgage referred to the correct address and parcel number for the debtors' property, neither of these descriptors was referenced in the recorder's index. *Id.* Thus, the defective legal description caused the recorder, through no fault of its own,[8] to erroneously record the mortgage outside the chain of title. *Id.* Judge Hopkins concluded that as a matter of Ohio law, the trustee could not be charged with constructive notice of the misindexed mortgage and it was subject to avoidance pursuant to 11 U.S.C. § 544(a)(3). *Id.* at *14.

Like the mortgage in *Hawthorne*, the Mortgage at issue in this case contains two correct identifiers for the 622 Franklin Property on the front page, but the information in the attached legal description is entirely incorrect and describes a parcel of property at Marsha Jeanne Way that the Debtor has never owned. When the Mortgage was recorded, it was the legal description that was used for indexing purposes to indicate the property encumbered by the Mortgage. Consequently, the incorrect legal description caused the Recorder's Office, through no fault of its own, to index the Mortgage outside the chain of title for the 622 Franklin Property. Mr. Ross testified that because of the misindexing, the Mortgage would not be discovered during a title search for a potential purchaser of the 622 Franklin Property. Consequently, this court reaches the same conclusion as Judge Hopkins in *Hawthorne*: the bankruptcy trustee, in the shoes of a bona fide purchaser, cannot be charged with constructive notice of a mortgage misindexed because of a defective legal description. Consequently, Flagstar's mortgage is avoidable pursuant to 11 U.S.C. § 544(a)(3).

Nonetheless, Flagstar argues that the Sixth Circuit's decision in *Bunn* is controlling and requires a conclusion that the mortgage provides constructive notice defeating the trustee's avoidance powers. The court disagrees. In *Bunn*, the Sixth Circuit concluded that a recorded mortgage gives constructive notice even when a legal description is omitted as long as a correct informal identifier for the property, like a street address, is provided. 578 F.3d at 490. In reaching this conclusion, the Sixth Circuit noted that "Ohio mortgage law does not appear to require a precise legal description of the mortgaged property." *Id.* Instead, Ohio Rev.Code § 5302.12 provides that a properly execut-

---

8. Judge Hopkins noted that the mistake was likely a scrivener's error of National City, the original mortgage holder. *Hawthorne*, 2013 Bankr.LEXIS 1567, at *10.

ed mortgage will have "force and effect" when "in substance" it follows a form set forth at the end of the statute requiring only a "description of land or interest in land and encumbrances, reservations, and exceptions, if any." *Id.* The Sixth Circuit concludes that a "reasonably prudent real estate purchaser, upon discovering that a residential lot has a mortgage that describes the lot by address but not by plat number when both the address and plat number are on the granting deed and the seller owns no other real estate in the county, is unlikely to proceed as if the lot were unencumbered." *Id.* For that reason, the Sixth Circuit concluded that the trustee could not use § 544 strong arm powers to avoid a mortgage that omitted a formal legal description when a correct street address of the property is listed.[9] *Id.*

9. In *Bunn*, the Sixth Circuit describes Ohio law and how it assumes that a potential purchaser of a parcel of residential property has searched the relevant title indexes and deeds in the chain of title for purposes of constructive notice. 578 F.3d at 489. However, the actual determinations in *Bunn* focus on whether the content of the mortgage at issue would provide constructive notice rather than how the mortgage was indexed and whether it would be found during a title search. *See, generally*, 578 F.3d 487. *See also Hawthorne*, 2013 Bankr.LEXIS 1567, at *9 n. 3 (noting that it did not appear that the Sixth Circuit in *Bunn* was asked to decide the indexing issue). Like the court in *Hawthorne*, this court concludes that the index is dispositive in this case since a potential purchaser would not be in a position to review the content of a mortgage that could not be found through a reasonable title search. *Hawthorne*, 2013 Bankr.LEXIS 1567, at *9 n. 3. Nonetheless, the court's ruling would not change if the court were to focus its determination on the content of Flagstar's mortgage. Whether focused on the content of the mortgage or how it was indexed, the vast majority of courts conclude that a mortgage containing a legal description for an incorrect parcel of real estate, even when other property identifiers in the mortgage are correct, is avoidable. *See Ameriquest Mortg. Co. v. Stradtmann (In re Stradtmann)*, 391 B.R. 14, 18–19 (8th Cir. BAP 2008) (noting that "a mortgage containing a defective legal description does not provide constructive notice to subsequent purchasers unless the subject property can be determined with reasonable certainty or the defect is apparent from the face of the mortgage"; a conflict between the legal description and the street address is not considered an apparent defect and consequently the mortgage was avoidable); *Stubbins v. Conseco Fin. Servicing Corp. (In re White)*, 2012 Bankr.LEXIS 4475, at *38–39 (Bankr.S.D.Ohio Aug. 30, 2012); *Sheeley*, 2012 WL 8969064, at *9 (distinguishing *Bunn* noting that constructive notice is not provided when a metes and bounds legal description in a mortgage is erroneous and conflicts with the street and parcel number for the property); *Votaw*, 2012 WL 529242, at *3–4 (concluding that *Bunn* is inapplicable to cases in which the information in the mortgage describing the property is actually incorrect rather than just omitted); *Jahn v. Bank of America (In re Lawson)*, 2011 WL 1167115, at *10–12 (Bankr.E.D.Tenn. March 28, 2011) (distinguishes *Bunn* because the deed of trust contains information about two entirely different pieces of property leaving the meaning of the deed of trust ambiguous; deed of trust avoidable by trustee); *Chase Home Fin., LLC v. Calloway (In re Calloway)*, 429 B.R. 802, 813–14 (Bankr.N.D.Ala.2010); *Hanrahan v. Univ. of Iowa Comm. Credit Union (In re Thomas)*, 387 B.R. 4, 9–11 (Bankr.N.D.Iowa 2008) (noting that the most critical element in the recordation process is the accuracy of the legal description; when a search is made it is through the legal description of the respective properties and if it is so misleading as to describe the wrong parcel, it does not provide constructive notice to third parties); *Chase Manhattan Mortg. Corp. v. Bird (In re Hiseman)*, 330 B.R. 251, 257 (Bankr.D.Utah 2005) (noting that constructive notice of a recorded document extends only to the legal description in the document and because the legal description in the trust deed described the wrong parcel of land, no constructive knowledge can be imputed to the trustee). *But see Field v. Ocwen Loan Servicing, LLC (In re Schlabach)*, 490 B.R. 555, 565–66 (Bankr. S.D.Ohio 2012) (concluding that a mortgage that contained a correct street address but a metes and bounds description for only one of two adjacent lots that were both collateral for the mortgage lien provided sufficient informa-

The critical fact differentiating *Bunn* from this case is that the *Bunn* mortgage contained no incorrect identifier for the property encumbered, it was only missing a formal legal description of the property. As noted by Mr. Ross in his testimony, a missing legal description would not cause the instrument to be misindexed and referenced to an erroneous piece of property; instead, the lack of a legal description would most likely result in an instrument indexed to no property at all, leaving a blank area where the legal description would be. Mr. Ross indicated that, during a title search, any instrument that is discovered in the index with no reference to a specific parcel of property would be reviewed. In other words, an omitted legal description, as opposed to an incorrect one, would not result in a misindexing of the mortgage and, thus, the mortgage at issue in *Bunn* would likely be discovered during a title search.

The fact that the Mortgage at issue in this case contains an incorrect legal description and the error caused the mortgage to be misindexed in the records differentiates this case from *Bunn* so that it is not controlling. In accordance with *Columbia Gas* and *Hawthorne,* this court concludes that the Mortgage held by Flagstar fails to provide constructive notice to a hypothetical bona fide purchaser. Consequently, the Mortgage is subject to avoidance pursuant to 11 U.S.C. § 544(a)(3).

**B. Proof of Claim**

██ Because the Mortgage is avoidable, the next question that must be answered is whether Flagstar may file an unsecured proof of claim for the balance owed pursuant to the Note. Flagstar has

---

tion to put a potential purchaser on constructive notice that both lots at that street address

---

not yet filed a proof of claim in the Debtor's bankruptcy case and Plaintiffs request that the court prohibit Flagstar from filing one at this late date. The Plaintiffs' position is without merit. Federal Rule of Bankruptcy Procedure 3002(c)(3) provides:

(c) Time for filing

In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code, except as follows:

* * *

(3) An unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property. If the judgment imposes a liability which is not satisfied, or a duty which is not performed within such period or such further time as the court may permit, the claim shall not be allowed.

Fed. R. Bankr.P. 3002. Pursuant to Rule 3002(c)(3), Flagstar will have thirty (30) days after judgment is entered avoiding its mortgage lien to file an unsecured proof of claim.

**CONCLUSION**

The Mortgage lien against the Debtor's one-half interest in the 622 Franklin Property is subject to avoidance by the Trustee pursuant to 11 U.S.C. § 544(a)(3) because the Mortgage instrument contains a legal description of an incorrect parcel of prop-

---

were encumbered by the lien).

erty that fails to provide constructive notice to a bona fide purchaser. The avoided lien will be preserved for the benefit of the estate. A judgment to this effect will be entered contemporaneously with this decision and Flagstar will have thirty (30) days from the entry of the judgment to file a proof of claim.

**SO ORDERED.**